682 August 20, 2025 No. 741

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

RANDY LEE GUZEK,
*Petitioner-Respondent,*

*v.*

Corey FHUERE,
Superintendent,
Oregon State Penitentiary,
*Defendant-Appellant.*

Marion County Circuit Court
17CV08248; A181531 (Control)

RANDY LEE GUZEK,
*Petitioner-Appellant,*

*v.*

Corey FHUERE,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
17CV08248; A181733

Daniel R. Murphy, Senior Judge.

Argued and submitted January 28, 2025.

Jordan R. Silk, Assistant Attorney General, argued the cause for petitioner-respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Gregory A. Rios, Assistant Attorney General.

Karen A. Steele argued the cause for defendant-appellant. Also on the briefs was Jeffrey E. Ellis.

Before Tookey, Presiding Judge, Jacquot, Judge, and DeVore, Senior Judge.

TOOKEY, P. J.

On appeal and cross-appeal, reversed and remanded.

**TOOKEY P. J.**

In this case in which petitioner seeks post-conviction relief, the superintendent appeals a general judgment granting petitioner relief on two guilt-phase post-conviction claims (Claim 72 and Claim 139). Petitioner cross-appeals the general judgment, which also denied relief on one guilt-phase post-conviction claim (Claim 75). The superintendent raises seven assignments of error. Petitioner, on his cross appeal, raises two assignments of error. We reverse and remand.

In the superintendent's first three assignments of error, he asserts that the post-conviction court erred in ruling that his amended answer "admitted-by-omission" paragraphs 5352, 5506, and 8439, of petitioner's sixth amended petition for post-conviction relief, which set forth Claims 72, 75, and 139, respectively. We agree that the post-conviction court erred. That conclusion obviates the need to address the superintendent's fourth and fifth assignments of error, in which he contends that, on the merits, the post-conviction court erred in granting petitioner post-conviction relief on Claim 72 and 139, respectively. That is so because the post-conviction court's grant of relief on Claims 72 and 139 was premised on its ruling that the superintendent admitted paragraphs 5352 and 8439, respectively.[1]

---

[1] This case arises in an odd procedural posture, because the precise legal basis under which the post-conviction court granted relief on Claims 72 and 139 and denied relief on Claim 75 is unclear from our review of the record.

As explained below, the post-conviction court granted relief to petitioner on Claims 72 and 139 (and denied relief on Claim 75) in the midst of the post-conviction trial and indicated that its ruling was "like a summary judgment being granted." But, as also explained below, neither petitioner nor the superintendent moved for summary judgment. And the Oregon Rules of Civil Procedure do not contemplate moving for summary judgment in the midst of trial. *See* ORCP 47 C ("The motion [for summary judgment] and all supporting documents must be served and filed at least 60 days before the date set for trial.").

The post-conviction court did indicate in its ruling granting relief to petitioner on Claims 72 and 139 (and denying relief on Claim 75) that certain deficiencies in the superintendent's answer, which the post-conviction court treated as "deemed admissions," were, at least partially, the basis for its ruling. In that respect, in some manner, the post-conviction court's ruling appears akin to a judgment on the pleadings. *See* ORCP 21 B ("After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.").

In any event, given the issues before us, the opaque nature of the post-conviction court's ruling granting relief to petitioner does not prevent us from resolving this appeal.

In the superintendent's sixth assignment of error, he contends that the post-conviction court erred in granting petitioner's motion to preclude imposition of a life without parole sentence. We agree with the superintendent that the post-conviction court erred, at least in the circumstances in which this case comes before us. Those circumstances include that this case comes before us in the post-conviction posture and, although petitioner was sentenced to death after his criminal trial, the Governor has since commuted his sentence to life without the possibility of parole. Our conclusion as to the superintendent's sixth assignment of error obviates the need to consider the superintendent's seventh assignment of error, in which he contends that the post-conviction court erred in denying his motion to dismiss petitioner's penalty-phase claims as moot. That is because the superintendent's request for dismissal of the penalty-phase claims as moot was premised on the post-conviction court's determination that life without parole was an unlawful sentence for petitioner.

Regarding petitioner's cross-appeal, in petitioner's first assignment of error on cross-appeal, he contends that the post-conviction court "abused its discretion in granting defendant's Motion for Leave to File [an] Amended Answer when it based its determination of ORCP 23 A's justice on the relative prejudices to each party rather than the effect on the substantial rights of the adverse party." We disagree with petitioner that the post-conviction court erred when it granted the superintendent's motion to amend his answer.

Finally, in petitioner's second assignment of error on his cross-appeal, he contends that the post-conviction court erred in denying relief on Claim 75. The superintendent responds that the post-conviction court "erred by ruling on that claim as a matter of law in the middle of trial." For reasons later explained, we agree with the superintendent that the post-conviction court erred in denying relief on Claim 75 midtrial in this case, as if the superintendent had moved for judgment on that claim when the superintendent had not in fact done so. But to the extent petitioner argues that the post-conviction court should have instead granted relief on Claim 75 midtrial based on the post-conviction court's

ruling that the superintendent's amended answer admitted-by-omission paragraph 5506, we reject that contention: That is because, as explained below in our discussion of the superintendent's second assignment of error, the post-conviction court erred in ruling that the amended answer admitted-by-omission paragraph 5506.

We reverse and remand.

## I.　FRAMING OBSERVATIONS

Before turning to the background facts of this case and our analysis of the issues on appeal, with regard to the issues raised in the superintendent's first three assignments of error, we pause to highlight how it is that this appeal comes to be before us and, in particular, the ramifications related to judicial process and procedure that have arisen as a result of the post-conviction court's ruling.

In this case, in litigation that had been pending for six years, on the fourth day set for trial, the post-conviction court, after it had already heard opening statements and the testimony of three witnesses, granted judgment to petitioner on two claims based, in part, on the superintendent's purported failure to adequately deny three paragraphs in his amended answer to petitioner's 6,424-page, 16,676 paragraph, sixth amended petition for post-conviction relief. That petition was filed three months before trial, and it set forth 392 claims for relief. Specifically, the post-conviction court determined that the superintendent had "admitted-by-omission" paragraphs 5352, 5506, and 8439 in the amended answer to the sixth amended petition.

The post-conviction court granted judgment to petitioner on those two claims—Claims 72 and 139—even though it recognized that there was not "any serious question on anyone's mind about what it is the [superintendent] believed and doesn't believe or resists or so on" and even though the three paragraphs at issue contained legal conclusions (to which the trial court agreed with the superintendent that no response was required) in addition to assertions of ultimate fact. *See* ORCP 18 A (a pleading "shall contain" a "plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition").

As explained below, we conclude that the post-conviction court erred because it should have disregarded the relevant "errors" or "defects" in the superintendent's amended answer under ORCP 12 B, which provides that, "The court *shall*, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." (Emphasis added.)

ORCP 12, together with ORCP 18, reflects "the view that the purpose of pleadings is to facilitate fair litigation of the merits of claims." *Ogle v. Nooth*, 365 Or 771, 781, 453 P3d 1274 (2019). But instead of abiding by the dictates of ORCP 12 B and disregarding the relevant "errors" or "defects" in the amended answer—two of which were clear typos—the post-conviction court elevated form over substance in a case where, read as a whole, the pleadings had served their function. *Ogle*, 365 Or at 781 ("[T]he purpose of requiring an exchange of pleadings is not to produce perfection in the statement of the issue but only to bring forth into the light the points that are in dispute." (Internal quotation marks omitted.)).

And, although we ultimately conclude that the post-conviction court erred, we highlight as well that the superintendent failed to take the steps that he could have taken to avoid the post-conviction court's need to resolve the issue underlying the superintendent's first three assignments of error. For example, the superintendent did not respond to a pretrial email from petitioner's counsel that asserted that the superintendent's answer had "provided no answer to a minimum of 550 paragraphs within the petition."

And when petitioner filed a request for admissions based on the superintendent's answer, the superintendent responded that the petition was "chockful of improper, irrelevant, and repetitive allegations in stark violation of ORCP 18 A," and that he "could have moved to strike the petition on that ground" but "chose not to." We do not quibble with aspects of the superintendent's description of the sixth-amended petition for post-conviction relief filed by petitioner.

Had the superintendent conferred with petitioner's counsel after petitioner's counsel's pretrial email about

the answer, or had the superintendent moved to strike the petition for its purported violations of ORCP 18 A if those violations made answering the petition a Sisyphean task, the post-conviction court may never have been faced with the issues that it was faced with during the trial of this case, resulting in the post-conviction court deeming "admit-ted-by-omission" paragraphs 5352, 5506, and 8439.

The net result of the post-conviction court's error in deeming "admitted-by-omission" paragraphs 5352, 5506, and 8439—which, again, was an error that the superinten-dent did not take the steps he could have to avoid—is that a decision on the merits of petitioner's post-conviction claims was significantly delayed.

If to delay justice is injustice, as it has been said, then the post-conviction court's error in failing to follow the dictates of ORCP 12 B worked an injustice in this case for all involved—including petitioner and the superintendent, whose day in court on petitioner's post-conviction petition was delayed, and the families of the victims, who are still awaiting a measure of finality.

## II.  BACKGROUND

For context, we set forth some background regard-ing this case, providing additional historical facts and pro-cedural history in our analysis of each assignment of error as necessary.

### A.  *The Underlying Criminal Proceedings*

In 1988, petitioner was tried for and convicted of, among other crimes, two counts of aggravated murder for the murders of Rod and Louis Houser at the Housers' home in rural Deschutes County. The murders occurred in 1987, and after the murders the Housers' killers "ransacked the Houser residence." *See State v. Guzek*, 310 Or 299, 301-02, 797 P2d 1031 (1990) (*Guzek I*) (describing background facts underlying criminal proceeding). After his conviction, peti-tioner was sentenced to death.

On direct review, the Supreme Court affirmed peti-tioner's convictions but reversed his sentence and remanded for a new penalty-phase trial. *Id.* at 308. After multiple

intervening appellate proceedings, in 2010, a jury again sentenced petitioner to death, and the Supreme Court affirmed that sentence on direct review. *State v. Guzek*, 358 Or 251, 253, 363 P3d 480 (2015).

B.   *The Post-Conviction Proceedings*

In 2017, petitioner filed for post-conviction relief from his judgment of guilt and sentence of death. Following an ensuing period of litigation, in early 2022, petitioner filed a fifth amended petition for post-conviction relief. The post-conviction court had set trial to begin on May 2, 2022.

In April 2022, petitioner filed motions to continue the May 2022 trial and associated pretrial deadlines. Additionally, in April 2022, the superintendent filed a trial memorandum responding to petitioner's post-conviction claims and opposing relief on all of them, including the claims at issue in this appeal (*i.e.*, the claims designated as Claims 72, 75, and 139 in the sixth amended petition).[2] At an April 14, 2022, hearing, petitioner explained that he needed "additional time to be ready to begin trial," to "investigate and proffer the proof that is necessary to prove the claims that we intend to advance," and to take "various depositions that we want to conduct prior to the start of the trial." The post-conviction court granted petitioner's motion to continue the trial and postponed it for a year—until May 2023.

On January 31, 2023—approximately three months before the May 2023 post-conviction trial—petitioner filed his sixth amended petition for post-conviction relief. The sixth amended petition alleged 392 claims for relief and totaled 6,424 pages.

On February 21, 2023, the superintendent filed his answer to that petition.

On March 7, 2023, counsel for petitioner emailed counsel for the superintendent asserting that the state had "provided no answer to a minimum of 550 paragraphs within the petition," although she did not identify the specific

_____

[2] The superintendent did, however, take the position that because petitioner "is no longer subject to the death penalty due to" *State v. Bartol*, 368 Or 598, 625, 496 P3d 1013 (2021), the post-conviction court "should enter a judgment modifying petitioner's sentence to one of life without the possibility of parole."

paragraphs that were omitted from the answer. The super-intendent believed that petitioner's counsel's email related to paragraphs that the superintendent did not answer in his answer because, as the superintendent asserted in his answer, those paragraphs were "irrelevant and immaterial to any issue in this case because defendant has already conceded that the death sentence must be vacated in light of *State v. Bartol*[, 368 Or 598, 496 P3d 1013 (2021)], and that petitioner cannot again be sentenced to death under SB 1013."[3]

On April 3, 2023, about a month before trial, petitioner filed a trial memorandum and request for "judicial notice and/or admission (ORCP 19 C)," asking the post-conviction court to rule that various "deficiencies" in the superintendent's answer should be treated as admissions. The request sought to have deemed admitted 41 paragraphs where, according to petitioner, the superintendent had failed to provide an answer. Among the paragraphs that petitioner sought to have the post-conviction court deem admitted were paragraph 5506, which set forth Claim 75, and paragraph 8439, which set forth Claim 139.

On April 10, 2023, the superintendent filed his amended trial memorandum. The superintendent's amended trial memorandum opposed post-conviction relief on all of petitioner's claims—including Claims 72, 75, and 139—and set out the superintendent's anticipated arguments. It also acknowledged that there were "typographical errors and inadvertent omissions" in the superintendent's answer, that the superintendent would "seek this court's leave to file an amended answer correcting them," and "reiterate[d] that [the superintendent] does not admit any deficient performance by petitioner's counsel and *** superintendent denies that petitioner is entitled to post-conviction relief, except for the vacation of the death sentence."

On April 13, 2023, the superintendent filed his motion for leave to file an amended answer, acknowledging

---

[3] As explained in our discussion of the superintendent's sixth assignment of error, in light of the Supreme Court's decision in *State v. Bartol*, 368 Or 598, 496 P3d 1013 (2021), the superintendent agreed with petitioner that petitioner's death sentence needed to be vacated, and that petitioner was entitled to a new sentence. The parties disagreed on what that new sentence should be.

that "[i]n the course of preparing for trial and responding to petitioner's Requests for Judicial Notice and/or Admissions, undersigned counsel determined that defendant's Answer to Petitioner's Sixth Amended Petition for Post-Conviction Relief, which was filed on February 21, 2023, contains several typographical errors and numerous inadvertent omissions which need to be corrected." Attached to that motion was a proposed amended answer.

On April 27, 2023, petitioner filed a second request for "judicial notice and/or admission (ORCP 19 C)," which identified another 50 paragraphs that petitioner sought to have deemed admitted. Among the paragraphs that petitioner sought the post-conviction court to deem admitted in that second request was paragraph 5352, which set forth Claim 72.

C.   *The May 1, 2023, Proceeding*

On May 1, 2023, when the case came before the post-conviction court for the first day of trial, petitioner's requests for judicial admission and the superintendent's motion for leave to amend his answer remained pending. After the post-conviction heard argument on those motions, it deferred ruling on them, and trial commenced with opening statements and the presentation of petitioner's first three witnesses.

D.   *The May 2, 2023, Proceeding*

On May 2, 2023—the morning set for the second day of trial—the post-conviction court returned to petitioner's April 3, 2023, request for judicial admission and granted the motion. It also denied the superintendent's motion for leave to amend the answer.

Petitioner then moved for "the equivalent of directed verdict" on the claims that the post-conviction court had purportedly "deemed admitted" by virtue of its ruling on the April 3, 2023, request for judicial admission. The superintendent argued directed verdict was not appropriate, contending that, among other points, the superintendent's answer adequately denied the claims at issue. The post-conviction court then adjourned until the following day.

E. *The May 3, 2023, Proceeding*

On May 3, 2023—the third day that was set for trial—the superintendent moved the court to reconsider its rulings from the day before granting petitioner's April 3, 2023, request for judicial admissions and denying the superintendent's motion for leave to amend. The petitioner argued that the post-conviction court should not reconsider its prior rulings, explaining that he "filed [his] trial memorandum relying on the State's answer." The superintendent responded that petitioner had adequate notice of the superintendent's positions—explaining: "They knew that, because they knew that we denied the facts. They knew that we denied the legal conclusion of their claims, so they know what we had admitted and denied. They have no reason to be surprised how the case is proceeding." The superintendent further explained that petitioner had not identified "something that is going to affect how a witness might testify, affect who she calls, who they are calling, or how they prepared their trial memo" and that the defects are "technical defects of the type that [ORCP] 12 is meant to address."

The post-conviction court granted the superintendent's motion for reconsideration; it then denied petitioner's request for judicial admissions and granted the superintendent's motion for leave to file his amended answer. The post-conviction court explained that on May 2 it was "satisfied" that its ruling was "sufficient and adequate under the circumstances in terms of the relative prejudices to each party," but that that day—May 3—it was "not so satisfied." It further explained that it had "looked at the body of law that basically tells us trial court judges, you should not allow a strict application of the Oregon Rules of Civil Procedure to in effect deny justice in a case" and that granting the request for judicial admissions "would be an enslavement to procedure over an adequate, careful hearing on the merits in order to obtain justice."

After granting the superintendent's motion for leave to file an amended answer, the parties and the court engaged in discussion about the scope of the allowed amendment to the answer: Petitioner asked "whether the [post-conviction court's] order means that the state may only amend as to

those omissions within Request [for Judicial Admissions] Number 1" or whether he would also be allowed to amend the answer to address the issues identified in the other request for judicial admissions. Petitioner also inquired whether "affirmative answers are being changed to denials."

The superintendent stated that he had noticed a "couple of stray typos in the proposed amended answer" filed on April 13 that he "would like to clean *** up" and would like to "add some language to make very clear that we are only admitting to the things we expressly admitted to," and that would include amendments responding to both requests for judicial admission that petitioner had filed.

The post-conviction court explained that the question of the scope of permissible amendments to the answer "can't be answered generically" and whether a proposed change would be allowed "depends on what the proposed change is and whether or not it significantly prejudices the petitioner because it had not been done until last minute," and that it would need to take up prejudice "individually with regard to the proposed changes in the answer" and it could not rule "in a vacuum."

Petitioner again argued that he would suffer prejudice from allowing the superintendent to amend his answer, asserting that he prepared "knowing that, despite the uncertainties in the State's answer, we could rely upon case law that is established about admissions being given precedent over denials. And we could also rely on the regular operation of the civil procedure rules" and that he had made "judgment calls, *** selected witnesses to call, *** selected questions to ask of witness, we dismissed or—dismissed witnesses" based on the superintendent's February 21, 2023, answer.

The court reiterated that it "isn't going to do any good to discuss it in the generic" and instructed petitioner's counsel that "if you come across a change in the admitted answer that significantly prejudices your case, then just identify that for the Court and object to it and we can address it then."[4]

_____

[4] During a colloquy with petitioner, the court also instructed petitioner personally that:

Petitioner then asserted that he had prepared for trial having "read the law * * *, and we realized that under the civil rules that the failure to provide an answer to something constitutes an admission," to which the court responded, "[i]t's not that simple and you know it's not that simple. And there's more to the rules than that." Petitioner then asked the court to allow the parties and the court to "go change by change" through the "new answer" to have the "opportunity to discuss the specific prejudice."

The court inquired whether the superintendent had provided petitioner with a copy of the amended answer that it was planning to file, and the superintendent responded "no," and the court then inquired whether the parties were "conspiring to postpone the trial indefinitely." The superintendent told the court he could send an amended answer to petitioner that afternoon, but that he was "prepared to rely on the answer that's been filed"—*i.e.*, the proposed amended answer attached to the April 13, 2023, motion—"if that's the Court's decision" and that if the court would "like to go forward on that answer, the State would be prepared to defend it." The petitioner then stated that moving forward on that answer "would be acceptable" to him.

Ultimately, the court adjourned until the next morning to "address possible prejudice at that time."

F. *The May 4, 2023, Proceeding*

The following morning, May 4, 2023, rather than addressing the issue of prejudice caused by the amendments to the answer attached to the superintendent's April 13, 2023, motion for leave to file an amended answer, petitioner moved "for the Court to grant relief on three claims"—specifically, Claims 72, 75, and 139—in which, in petitioner's view, "the State ha[d] admitted facts that constitute[] sufficient grounds for relief," even with the state's amendments to its answer.[5]

---

"[I]f and when counsel identifies a situation where the filing of the amended answer creates a significant prejudice to your case, she will identify that and we will address it at that time."

[5] As explained below, Claim 72 asserted that the criminal trial court erred in failing to "*sua sponte* intervene to prevent jury contamination by impermissible vouching and inadmissible vouching [evidence] and the prosecution's vouching argument." Claim 75 asserted petitioner's appellate counsel was inadequate under the federal constitution in "failing to raise as plain error on direct capital

After hearing argument, the post-conviction court ruled that the superintendent had "admit[ed] by omission" the "ultimate facts" in paragraphs 5352 (setting forth Claim 72), 5506 (setting forth Claim 75), and 8439 (setting forth Claim 139), but not the legal conclusions in those paragraphs. In making its ruling, the post-conviction acknowledged that it did not "think there's any serious question on anyone's mind about what it is the State believed and doesn't believe or resists or so on" but that we "can't make these decisions based on our assumptions about what other people are thinking, that's why we have pleadings."

The post-conviction court then heard argument about the effect of those deemed admissions on the merits of petitioner's case. After hearing argument, it ruled that petitioner was entitled to post-conviction relief on Claims 72 and 139. It denied relief on Claim 75.

The superintendent then inquired what the "legal vehicle" was for the post-conviction court's midtrial ruling granting judgment to petitioner, and asked if the post-conviction court was "considering this like a summary judgment being granted?" To which the post-conviction court responded, "I suppose that's what it is, yes."

G. *Proceedings After the Post-Conviction Court's Ruling*

Subsequently, on May 25, 2023, the post-conviction court entered an order granting the superintendent's motion for leave to amend his answer to the sixth amended petition for post-conviction relief. And, on June 2, it entered a general judgment granting petitioner relief on Claim 72 and Claim 139, denying relief on Claim 75, and dismissing petitioner's remaining claims as moot. That general judgment reflects that, in granting relief, the post-conviction court relied on "historical facts including the 1988 trial transcripts, the trial records including the codefendants' plea petitions admitted as trial exhibits, and the Superintendent's admissions in its [April 13, 2023,] Amended Answer as well as the

appeal the trial court's error in admitting [petitioner's] codefendant['s] plea petitions containing layers of vouching in the underlying criminal case." And Claim 139 asserted that petitioner's trial counsel was inadequate under the state constitution in "accepting appointment without first securing sufficient time to perform the functions of professional assistance."

ultimate facts in paragraphs 5352, 5506, and 8439 (relating to Claims 72, 75, and 139, respectively) of the Sixth-Amended Petition for Post-Conviction Relief." Specifically, the postconviction court determined that there was:

"1.   Sufficient evidence that petitioner Guzek met his statutory burden under the Post-Conviction Relief Act on Claim 72, and that Mr. Guzek suffered prejudice as a result; and

"2.   Sufficient evidence that petitioner Guzek met his statutory burden under the Post-Conviction Relief Act on Claim 139, specifically, that *Guzek I* trial counsel Kittredge failed to exercise reasonable professional skill and judgment, and that [petitioner] suffered prejudice as a result."

Further, regarding Claim 75, the post-conviction court determined that there was not "sufficient evidence that petitioner Guzek met his statutory burden that *Guzek I* appellate counsel * * * failed to provide Mr. Guzek with effective assistance of appellate counsel as alleged in Claim 75."

Superintendent now appeals and petitioner-cross appeals.

## III.   THE SUPERINTENDENT'S MOTION TO AMEND (PETITIONER'S FIRST ASSIGNMENT OF ERROR ON CROSS-APPEAL)

We begin with petitioner's first assignment of error on cross-appeal, in which he asserts that the post-conviction court erred when it granted the superintendent's motion for leave to file an amended answer to the sixth amended petition for post-conviction relief.[6]

Amendment of pleadings is governed by ORCP 23 A, which provides:

"A pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may so amend it at any time within

---

[6] We note that the amended answer to the sixth amended petition for post-conviction relief amended the superintendent's response to paragraph 8439 (setting forth Claim 139), but not the response—or lack thereof—to paragraphs 5352 and 5506 (setting forth Claims 72 and 75, respectively).

> 20 days after it is served. *Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires*."

(Emphasis added.)

This court reviews the lower court's decision regarding a motion for leave to amend a pleading under ORCP 23 A for abuse of discretion. *Eklof v. Persson*, 369 Or 531, 537, 508 P3d 468 (2022) (so noting with respect to denial of leave to amend). "That discretion is bounded by the text of ORCP 23 A, which directs that 'leave shall be freely given when justice so requires.'" *Id.* (quoting ORCP 23 A). The "gravamen of the inquiry under ORCP 23 A is prejudice to the opposing party." *Id.* at 533. Further, although our overall review of the trial court's decision under ORCP 23 is for abuse of discretion, "we review legal questions underlying that ultimate discretionary choice for legal error." *Clark v. University of Oregon*, 319 Or App 712, 722, 512 P3d 457, *rev den*, 370 Or 471 (2022).

On appeal, petitioner's chief contention—or as petitioner puts it, the "point of [his] First Assignment of Error"—is that the post-conviction court "did not weigh the appropriate considerations in exercising discretion, specifically, it did not weigh prejudice to the opposing party." As a result, as petitioner sees it, the post-conviction court's ruling was based on a "mistaken legal premise, *i.e.*, that it could grant the defendant's motion to amend without first taking into account the prejudice to petitioner." In advancing that argument, petitioner points to the post-conviction court's May 3, 2023, statement that it was granting reconsideration because the prior day it was satisfied that its ruling was "sufficient and adequate under the circumstances in terms of the *relative prejudices to each party*." (Emphasis added.)

Having reviewed the record, we disagree with petitioner that the post-conviction court abused its discretion by relying on, in the words of petitioner, a "mistaken legal premise" when it granted the superintendent's motion to amend the answer to the sixth amended petition for post-conviction relief. As described above, after the post-conviction court initially granted the superintendent's motion to amend the

answer on May 3, 2023 (and the parties were still unsure about the scope of the amendments), petitioner raised the issue of prejudice—and he asserted various ways that he would experience prejudice if amendment was allowed. The post-conviction court explained that it would need to consider the issue of prejudice "individually with regard to the proposed changes in the answer," that it could not rule "in a vacuum," and asked petitioner's counsel to identify any change that "significantly prejudices your case, * * * object to it," and "we can address it then." The post-conviction court then adjourned to address prejudice on the morning of May 4, 2023.

On the morning of May 4, 2023, rather than addressing prejudice caused by the proposed amendment to the answer to the sixth amended petition for post-conviction relief—as petitioner had asked to do—recognizing perceived insufficiencies in the amended answer, petitioner moved for judgment on Claims 72, 75, and 139, and the post-conviction court granted that motion, in part.

That series of events reflects that rather than proceeding on a "mistaken legal premise" that it need not address prejudice to petitioner, the post-conviction court explicitly invited petitioner to make arguments on the issue of prejudice related to the amended answer to the sixth amended complaint. But rather than arguing prejudice arising from each change to the answer—as petitioner had requested to do on May 3—petitioner chose to move for judgment on Claims 72, 75, and 139. That motion was ultimately successful in resolving the case in petitioner's favor in the post-conviction court.

> On this record, the post-conviction court's decision to allow the amendment was "within the permissible range of legally correct outcomes and was, therefore, a permissible exercise of the court's discretion." *State v. Hayter*, 303 Or App 235, 238-39, 463 P3d 33 (2020), *rev dismissed*, 369 Or 705 (2022). That is, it was not an abuse of discretion for the post-conviction court to decline to rule "in a vacuum" and to grant the motion to amend after petitioner failed to present argument on how each proposed change would prejudice his case.

### IV.   CLAIM 139 (THE SUPERINTENDENT'S THIRD AND FIFTH ASSIGNMENTS OF ERROR)

As noted, the post-conviction court granted relief on Claim 139 in petitioner's sixth amended petition for post-conviction relief, after concluding that the superintendent had admitted paragraph 8439 in his amended answer to that petition. In Claim 139, petitioner alleged that his lead trial counsel during his criminal trial accepted appointment without having "secur[ed] sufficient time in which to perform the functions of professional assistance of counsel."

In his third assignment of error, the superintendent asserts that "the post-conviction court erred by ruling that the amended answer admitted-by-omission paragraph 8439 of petitioner's petition for post-conviction relief." As explained below, we agree with the superintendent that that was error.

Further, because the post-conviction court's grant of relief on Claim 139 was premised, at least in part, on its ruling that the amended answer admitted-by-omission paragraph 8439 of petitioner's petition for post-conviction relief, we reverse the grant of relief on Claim 139. That conclusion obviates the need to consider the superintendent's fifth assignment of error, in which he asserts that, on the merits, the post-conviction court erred in granting petitioner post-conviction relief Claim 139.[7]

### A.   *The Sixth Amended Petition and the Superintendent's February 21, 2023, Answer to Paragraph 8439*

In the superintendent's February 21, 2023, answer to the sixth amended petition for post-conviction relief, the superintendent omitted a response to paragraph 8439. Paragraph 8439 set forth Claim 139, which asserted that petitioner was denied adequate assistance of counsel under state law because his lead counsel "accepted appointment to [petitioner's] capital Aggravated Murder case approximately

---

[7] We note that, on appeal, petitioner recognizes that the post-conviction court "based its merits decisions in granting Claims 72 and 139" in part on the superintendent's "deemed admissions." Petitioner does not develop an argument that if we agree with the superintendent that the post-conviction court erred in deeming paragraphs 5352 and 8439 admitted we should nevertheless affirm on the post-conviction court's grant of relief on Claims 72 and 139.

13 weeks prior to trial without first securing sufficient time in which to perform the functions of professional assistance of counsel which [petitioner] relied upon him to perform on his behalf." In full, paragraph 8439 provided:

**"139th CLAIM FOR RELIEF (INADEQUATE ASSISTANCE OF *GUZEK I* LEAD TRIAL COUNSEL KITTREDGE (STATE) IN ACCEPTING APPOINTMENT WITHOUT FIRST SECURING SUFFICIENT TIME TO PERFORM THE FUNCTIONS OF PROFESSIONAL ASSISTANCE)**

"[Petitioner] was denied his rights to adequate assistance of counsel under ORS 135.040, *et seq.*, and Article I, sections 11 and 16, of the Oregon Constitution, when, *Guzek I* lead counsel Kittredge accepted appointment to [petitioner's] capital *Aggravated Murder* case approximately 13 weeks prior to trial without first securing sufficient time in which to perform the functions of professional assistance of counsel which [petitioner] relied upon him to perform on his behalf and as identified within this *** {**Sixth**}-*Amended Petition*, including counsel's failure to investigate, identify, adduce, and present available evidence in a manner legally and factually appropriate to the nature and complexity of [petitioner's] case, failure to adequately communicate with [petitioner] about the means by which [petitioner's] objectives were to be accomplished and inform [petitioner] in a manner and to the extent appropriate to the circumstances and to [petitioner] level of understanding, including the consequences of non-tactical choices which were [petitioner's] alone to make, and failure to subject the prosecution's case to the crucible of meaningful adversarial testing, including failing to contemporaneously object to evidence that would otherwise be suppressed, violating [petitioner's] rights pursuant to Article I, sections 11, 15 (1987), 16, 20, and 33, and Article VII (Amended), section 3, of the Oregon Constitution, and Article VI, cl. 2, and the Fifth, Sixth, Eighth and Fourteenth (equal protection and due process) amendments to the United States Constitution."

(Boldface and emphasis in original.)

Paragraph 8439 was within a section of the sixth amended petition for post-conviction relief titled petitioner's **"14th SET OF CLAIMS FOR RELIEF (*Guzek I* Cumulative Deficiencies)"** (boldface in original), which spanned paragraph 8438 to paragraph 8462 of the petition.

Although the superintendent's February 21, 2023, answer to the sixth amended petition did not specifically deny Claim 139 as set forth in paragraph 8439, it did deny the following paragraph in the petition, paragraph 8440, which set forth Claim 140. Claim 140 alleged an ineffective assistance of counsel claim premised on the same core facts as Claim 139, but as arising under federal law, whereas, as noted, paragraph 8439 alleged the claim under state law.[8] The February 21, 2023, answer also denied paragraphs 8442 through 8450, which contained allegations "in support of" Claims 139 and 140, among them, allegations asserting the purported deficiency of petitioner's trial counsel's performance in connection with Claims 139 and 140 and that that deficiency prejudiced petitioner.[9] Finally, the February 21, 2023, answer included a prayer for relief indicating that the

---

[8] Paragraph 8440 of petitioner's sixth amended petition for post-conviction relief provided:

**"140th CLAIM FOR RELIEF (INADEQUATE ASSISTANCE OF *GUZEK I* LEAD TRIAL COUNSEL KITTREDGE (FEDERAL) IN ACCEPTING APPOINTMENT WITHOUT FIRST SECURING SUFFICIENT TIME TO PERFORM THE FUNCTIONS OF PROFESSIONAL ASSISTANCE)**

"[Petitioner] was denied his rights to effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth (due process) amendments to the United States Constitution, when, *Guzek I* lead counsel Kittredge accepted appointment to [petitioner's] capital *Aggravated Murder* case approximately 13 weeks prior to trial without first securing sufficient time in which to perform the functions of professional assistance of counsel which [petitioner] relied upon him to perform on his behalf and as identified within this *** {**Sixth**}-*Amended Petition*, including counsel's failure to investigate, identify, adduce, and present available evidence in a manner legally and factually appropriate to the nature and complexity of [petitioner's] case, failure to adequately communicate with [petitioner] about the means by which [petitioner's] objectives were to be accomplished and inform [petitioner] in a manner and to the extent appropriate to the circumstances and to [petitioner's] level of understanding, including the consequences of non-tactical choices which were [petitioner's] alone to make, and failure to subject the prosecution's case to the crucible of meaningful adversarial testing, including failing to contemporaneously object to evidence that would otherwise be suppressed, violating [petitioner's] rights pursuant to Article I, sections 11, 15 (1987), 16, 20, and 33, and Article VII (Amended), section 3, of the Oregon Constitution, and Article VI, cl. 2, and the Fifth, Sixth, Eighth and Fourteenth (equal protection and due process) amendments to the United States Constitution."

(Boldface and emphasis in original.)

[9] For example, paragraph 8443, which the superintendent denied, alleged:

"Competent counsel exercising reasonable professional skill and judgment would not have accepted appointment to [petitioner's] capital *Aggravated Murder* case approximately 13 weeks prior to trial without first securing

superintendent sought an order denying "all the claims in petitioner's petition," but modifying petitioner's death sentence to a sentence of life without parole.

B.   *The Superintendent's Amended Answer to the Sixth Amended Petition*

In his amended answer to the sixth amended petition for post-conviction relief, the superintendent—in a section responding to petitioner's "'**14th Set of Claims for Relief**,' as set forth in paragraphs 8438 to 8462" (boldface in original)—included a denial of paragraph 8439, but that denial contained a scrivener's error, referencing paragraph 83439 instead:

> "With respect to petitioner's '**14th Set of Claims for Relief**,' as set forth in paragraphs 8438 to 8462, defendant:
>
> "denies the allegations of paragraphs {**83439**,} 8440 and 8442-52{**, and 8462**};"

(Boldface in original.)[10]

C.   *The Post-Conviction Court Erred in Deeming Paragraph 8439 Admitted.*

As noted, on appeal, in his third assignment of error, the superintendent contends that the post-conviction court erred by "ruling that the amended answer admitted-by-omission paragraph 8439 of petitioner's petition for post-conviction relief." Pointing to ORCP 12 B, the superintendent argues, among other points, that "trial courts must

---

sufficient time in which to perform the functions of professional assistance of counsel which [petitioner] relied upon him to perform on his behalf."

(Emphasis in original.)

Paragraph 8450, which the superintendent denied, alleged:

"[Petitioner] suffered prejudice as a result of *Guzek I* trial counsel's inadequate and ineffective performance as set forth in this \*\*\* {**Sixth**}-*Amended Petition*, the combined effect of counsel's deficiencies \*\*\* having the tendency to affect the result in that had *Guzek I* lead trial counsel Kittredge, prior to accepting appointment to [petitioner's] capital *Aggravated Murder* case approximately 13 weeks prior to trial, secured sufficient time, counsel could have reasonably performed the functions of professional assistance of counsel \*\*\*."

(Boldface and emphasis in original.)

[10]  The bracketed boldface reflects the amendments the superintendent made between his February 21, 2023, answer to the sixth amended petition for post-conviction relief and his amended answer to that petition.

disregard pleading errors when the whole record shows that the adverse party had adequate notice of the issues," that the error at issue here was an "obvious typo[]," and that petitioner had "adequate notice of the superintendent's position" on Claim 139.

Petitioner responds that the post-conviction court "properly exercised its discretion in ruling that [the superintendent's] conscious choice not to answer Paragraph 8439 in petitioner's Petition constituted an admission by operation of ORCP 19, and ORCP 12 did not relieve [the superintendent] from the consequences of its chosen course of action." As petitioner sees it, the superintendent did not "attempt to comply with" ORCP 19 A, which provides "[a] party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the allegations upon which the adverse party relies," because he chose to rely on his April 13, 2023, amended answer to the sixth amended petition for post-conviction relief rather than seeking to file a different amended answer. That is, in petitioner's view, the superintendent "was not eligible for ORCP 12 B's disregard of defects or errors in its *** pleading."

Petitioner also argues that he "presented ample information to the [post-conviction court] about prejudice to him" stemming from the amendments, including "petitioner's justifiable reliance on the rules and established caselaw, and the very late stage of the proceedings in which defendant sought ORCP 12 relief for its deficient pleading."

ORCP 19 governs responsive pleadings, such as answers, and provides, in relevant part:

"**A Defenses; form of denials.** A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the allegations upon which the adverse party relies. ***

"*****

"**C Effect of failure to deny.** Allegations in a pleading to which a responsive pleading is required *** are admitted when not denied in the responsive pleading."

(Boldface in original; emphasis added.)

ORCP 12 governs construction of pleadings and errors in pleadings, including those in responsive pleadings. It provides:

"**A   Liberal construction.** All pleadings shall be liberally construed with a view of substantial justice between the parties.

"**B   Disregard of error or defect not affecting substantial right.** The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."

(Boldface in original; emphasis added.)

In considering the issue here, we keep in mind that trial courts "are afforded a wide range of discretion and are certainly entitled to require litigants that appear before them to fully comply with court rules and procedures." *Chevalier Advertising v. Ballista Tactical Systems*, 278 Or App 148, 160, 373 P3d 1211 (2016). But we also bear in mind that the "purpose of pleadings is to facilitate fair litigation of the merits of claims." *Ogle*, 365 Or at 781. That is,

"[t]he purpose of requiring an exchange of pleadings is not to produce perfection in the statement of the issue but only to bring forth into the light the points that are in dispute. When those points are sufficiently revealed so that the opponent is apprised of what he must meet and the trial judge is given sufficient information so that he can rule advisedly during the progress of the trial, the pleadings have performed their function."

*Id*. (internal quotation marks omitted); *see also Marsh v. Walters*, 242 Or 210, 214, 408 P2d 929 (1965) ("[T]he modern view of the function of pleadings is that the court should allow reasonable latitude in order to reach a decision on the merits whenever it is possible to do so without prejudice to the substantive rights of a party.").

At issue with regard to Claim 139 as framed by the superintendent's third assignment of error is whether ORCP 12 B required the post-conviction court to disregard the "error" or "defect" in the amended answer to the sixth amended petition for post-conviction relief—*i.e.*, the

scrivener's error referencing paragraph "83439" instead of paragraph "8439."

The words "error" and "defect" in ORCP 12 B describe "acts that fail to achieve or complete something that a person has attempted to do." *Mulier v. Johnson*, 332 Or 344, 350, 29 P3d 1104 (2001). Under ORCP 12 B, then, "an error or defect is a failure to achieve or complete an attempt to comply with the requirements of the rules of civil procedure." *Id.* That is, in considering whether a party can avail themselves of ORCP 12 B, there is a distinction between a "complete failure" to comply and an imperfect attempt. *See Mulier*, 332 Or at 350 ("A *complete failure* to allege the right to attorney fees in a motion under ORCP 68 C(2)(b) does not demonstrate an attempt to comply with the requirements of that rule." (Emphasis added.)).

In determining whether the "substantial rights" of a plaintiff are affected within the meaning of ORCP 12 B by an error or defect in a responsive pleading, we have considered whether the plaintiff understands the defendant's position during the course of a litigation. *Jones v. Four Corners Rod and Gun Club*, 290 Or App 811, 822 n 10, 418 P3d 765, 772 (2018), *aff'd in part, rev'd in part*, 366 Or 100, 456 P3d 616 (2020) ("defect or error" by defendant in incorrectly pleading "its affirmative defense as setoff," rather than "recoupment," did not "affect the substantial rights of the parties" where the "record reflects" that, "from the outset of the case through trial, plaintiff understood" the nature of defendant's defense). But a "substantial right is affected where the pleadings fail to allege facts that alert the court to and support the actual claims or defenses of an adverse party." *Hawkins v. City of La Grande*, 315 Or 57, 63, 843 P2d 400 (1992).

As an initial matter, we are not persuaded by petitioner's argument that the superintendent did not "attempt to comply" with the requirements of ORCP 19 A when he filed his amended answer to the sixth amended petition for post-conviction relief and denied the allegations in paragraph "83439" rather than paragraph 8439. Although petitioner contends that the superintendent made an "intentional choice not to comply," by resting on his proposed

amended answer that was attached to his April 13, 2023, motion for leave to file an amended answer, rather than seeking to file a different amended answer, here, we disagree with petitioner that the circumstances would permit a determination that the superintendent failed to attempt to comply with ORCP 19 A. Those circumstances include the following: the superintendent informed the post-conviction court and petitioner that it was aware of typos in the April 13, 2023, "proposed amended answer," and was planning to provide a different amended answer, but that it was "prepared to rely on" the April 13 proposed amended answer "if that's the Court's decision" and if the court would "like to go forward on that answer," and the petitioner's statement that moving forward on that answer "would be acceptable." The circumstances also include the complexity and length of the petition for post-conviction relief (6,424 pages).

Moreover, the record does not support a determination that disregard of the error or defect in the superintendent's response to paragraph 8439 would "affect the substantial rights" of petitioner. The superintendent's pleading brought forth "into the light the points that are in dispute," *Ogle*, 365 Or at 781 (internal quotation marks omitted), with regard to paragraph 8439 setting forth Claim 139 when the superintendent he denied paragraph "83439" in his amended answer; denied the paragraph following paragraph (8440), which set forth Claim 140, alleging an ineffective assistance of counsel claim premised on the same core facts as Claim 139, but as arising under federal law; and the superintendent's prayer for relief seeking an order denying judgment on all claims.

Petitioner asserts that he "presented ample information to the [post-conviction court] about prejudice to him" from the superintendent's typo, including "petitioner's justifiable reliance on the rules and established caselaw, and the very late stage of the proceedings in which defendant sought ORCP 12 relief for its deficient pleading." But as noted, the post-conviction court allowed the amendment to the sixth amended complaint, notwithstanding the prejudice that petitioner asserted he would suffer as a result of the amendment. In doing so, the post-conviction court noted, with

regard to petitioner's purported reliance on the principle that "failure to provide an answer to something constitutes an admission," that "[i]t's not that simple and *you know it's not that simple*." (Emphasis added.) That is, we understand the post-conviction court to have been saying that petitioner could not reasonably rest his trial preparation strategy in a case that had been pending for six years, involving 392 claims for relief, in which he did not file the operative petition until three months before trial and did not have an answer to that petition until a little over two months before trial, on the possibility that the post-conviction court would grant a request for admission that was filed approximately one month before trial and was still pending when trial began, at least when the answer to the petition denied a nearly identical claim and associated paragraphs.

Put differently, it would undermine the purpose of ORCP 12 B if the affect to the "substantial rights" that was contemplated by ORCP 12 B was a party's loss of the ability to utilize an obvious "error" or "defect" in a pleading to prevent the parties from litigating the merits of a claim. *See Ogle*, 365 Or at 781 (ORCP 12 and ORCP 18 A "together" reflect "the view that the purpose of pleadings is to facilitate fair litigation of the merits of claims").

Consequently, under ORCP 12 B, the post-conviction court should have disregarded the "error or defect" in the superintendent's amended answer to the sixth amended petition for post-conviction relief when the superintendent answered with a denial to paragraph 83439 instead of 8439. ORCP 12 B ("The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."). It was error for it not to do so and to instead treat paragraph 8439 as admitted.

Moreover, as noted, we understand the post-conviction court's grant of judgment to petitioner on Claim 139 to have been premised on its ruling that the superintendent admitted the allegations in paragraph 8439 of the sixth amended petition for post-conviction relief. Because that was error, we reverse the grant of judgment to petitioner on Claim 139.

## V.   CLAIM 72 (THE SUPERINTENDENT'S FIRST AND FOURTH ASSIGNMENTS OF ERROR)

The post-conviction court granted relief on Claim 72 in petitioner's sixth amended petition for post-conviction relief, after concluding that the superintendent had admitted paragraph 5352, which set forth Claim 72. In Claim 72, petitioner alleged that the criminal trial court erred in failing to "*sua sponte* intervene to prevent jury contamination by impermissible vouching" by a particular witness and "the prosecution's vouching argument."

In his third assignment of error, the superintendent asserts that "the post-conviction court erred by ruling that the amended answer admitted-by-omission paragraph 5352 of petitioner's petition for post-conviction relief." As explained below, we agree with the superintendent, largely for the same reasons as with respect to the superintendent's assignment related to the trial court's ruling deeming paragraph 8439 admitted.

Further, because the post-conviction court's grant of relief on Claim 72 was premised on its ruling that the amended answer admitted-by-omission paragraph 5352 of petitioner's petition for post-conviction relief, we reverse the grant of relief on Claim 72. That conclusion obviates the need to consider the superintendent's fourth assignment of error, in which he asserts that, on the merits, the post-conviction court erred in granting petitioner post-conviction relief on Claim 72.

A.  *Historical   Facts,   Paragraph   5352,   and   the Superintendent's February 21, 2023, Answer*

As described in petitioner's petition for post-conviction relief, during petitioner's criminal trial a state rebuttal witness, White, testified that another state rebuttal witness, Thom, "was a truthful person." Paragraph 5352 (which set forth Claim 72) asserted that the criminal trial court erred in failing to "*sua sponte* intervene to prevent jury contamination by impermissible vouching and inadmissible vouching testimony by * * * White and the prosecution's vouching argument."

Specifically, paragraph 5352 provided:

**"72nd CLAIM FOR RELIEF (TRIAL COURT ERROR IN FAILING TO *SUA SPONTE* INTERVENE TO PREVENT JURY CONTAMINATION BY IMPERMISSIBLE AND INADMISSIBLE VOUCHING TESTIMONY BY KATHY WHITE AND THE PROSECUTION'S VOUCHING ARGUMENT)**

"The *Guzek I* trial court erred when it failed to intervene *sua sponte* at the time of the admission of the question, testimony, and argument, by striking and/or taking curative action including giving a curative instruction sufficient to prevent the 1988 culpability trial jurors from being exposed to, contaminated by, and precluding jurors from considering irrelevant, impermissible, and inadmissible vouching evidence and argument, including White's testimony affirming her opinion that Thom was a truthful person, and the prosecution's argument using the White testimony to further bolster the credibility of key State witness Thom, which constituted irrelevant and inadmissible vouching, relied upon and/or implied knowledge of facts outside of the record, directly reflected upon and impermissibly bolstered the credibility of the State's narrative and the testimony of key State witnesses (including Thom, Wilson, and Cathey), impermissibly undermined the credibility of [petitioner's] alibi witnesses and theory of the case, invaded the jury's role as the sole assessor of the credibility of witnesses, their prejudicial impact outweighed any relevancy, and the trial court error violated [petitioner's] constitutional rights to a fair trial, to due process of law, and to confront his accusers, and further violating [petitioner's] rights pursuant to Article I, sections 10, 11, 15 (1987), 16, 20, and 33, of the Oregon Constitution, and Article VI, cl. 2, and the Fifth, Sixth, Eighth and Fourteenth (equal protection and due process) amendments to the United States Constitution."

(Boldface and emphasis in original.)

Paragraph 5352 of the sixth amended petition for post-conviction relief was within a section of the petition titled petitioner's "**9th SET OF CLAIMS FOR RELIEF (*Guzek I* Vouching)**" (boldface in original), which spanned paragraphs 4611 to 6785—*i.e.*, over two thousand paragraphs.

In the superintendent's February 21, 2023, answer to the sixth amended petition, under a heading responding to paragraphs 4611 to 6785, the superintendent denied paragraphs "5351-**32**" (boldface added), rather than paragraphs 5351-**52**.

As a result of that error in drafting the February 21, 2023, answer, the answer arguably did not expressly deny the allegations in paragraph 5352. But it did deny related paragraphs. For example, the February 21, 2023, answer denied paragraphs 4954 and 4955, which alleged that *Guzek I* trial counsel was inadequate and ineffective in failing to object to White's "vouching testimony" and what petitioner called "the prosecution's vouching argument"; denied paragraph 4977, which alleged that White's testimony "affirming her opinion that Thom was a truthful person" was "irrelevant and impermissible vouching"; and denied paragraph 5016, which alleged that petitioner suffered prejudice as a result of trial counsel's failure to object to White's testimony about Thom's credibility. The responses to those paragraphs did not change in the superintendent's amended answer to the sixth amended petition for post-conviction relief.

B. *The Post-Conviction Court Erred in Deeming Paragraph 5352 Admitted.*

As noted, on appeal, in his first assignment of error, the superintendent contends that "the post-conviction court erred by ruling that the amended answer admitted-by-omission paragraph 5352 of petitioner's petition for post-conviction relief." The parties' arguments as to this assignment of error largely mirror those made with regard to the post-conviction court's decision regarding paragraph 8439.

As with paragraph 8439 (Claim 139), at issue with regard to paragraph 5352 (Claim 72), as framed by the superintendent's first assignment of error, is whether ORCP 12 B required the post-conviction court to disregard the "error" or "defect" in the amended answer to the sixth amended petition for post-conviction relief—*i.e.*, the scrivener's error referencing paragraph "5351-32" rather than paragraphs "5351-52."

And like with Claim 139, as an initial matter, we disagree with petitioner that the circumstances of this case

would permit a determination that the superintendent failed to attempt to comply with ORCP 19 A. The superintendent's attempt to comply was imperfect, but his attempt to comply was manifest in the answer itself. *Bruce v. Cascade Collections, Inc.*, 199 Or App 59, 67, 110 P3d 587 (2005), *rev den*, 339 Or 66 (2005) (considering whether attempt to comply was "manifest").

Additionally, in our view, the record does not support a determination that disregard of the "error" or "defect" in the superintendent's response to paragraphs "5351-32" would "affect the substantial rights" of petitioner. As an initial matter, the denial at issue—*i.e.*, paragraphs "5351-32"—appears to include a denial of paragraph 5352, because the next paragraph after 5351 that could possibly end in "32" is *54*32. Moreover, and as set forth above, the superintendent's amended answer to the sixth amended petition denied numerous allegations related to those in paragraph 5352—*e.g.*, paragraphs 4954 and 4955 (*Guzek I* trial counsel was inadequate and ineffective in failing to object to White's testimony and the prosecution's vouching argument), paragraph 4977 (White's testimony was "impermissible vouching"), and paragraph 5016 (petitioner suffered prejudice as a result of trial counsel's failure to object to White's testimony). And the superintendent consistently took the position that the post-conviction court should deny relief on all claims. It is difficult to see how petitioner would have thought the superintendent was *admitting* Claim 72 set forth in paragraph 5352 when the superintendent sought an order denying relief on all claims in his answer to the sixth amended petition.

Consequently, we conclude that under ORCP 12 B, the post-conviction court should have disregarded the "error or defect" in the superintendent's amended answer to the sixth amended petition for post-conviction relief when the superintendent answered with a denial to paragraph "5351-32" rather than paragraphs "5351-52" and erred in deeming paragraph 5352 admitted.

Moreover, the post-conviction court's grant of judgment to petitioner on Claim 72 was premised, in part, on its ruling that the superintendent admitted the allegations in paragraph 5352 of the sixth amended petition for

post-conviction relief. Because that ruling was error, we reverse the grant of judgment to petitioner on Claim 72.

## VI.   CLAIM 75 (THE SUPERINTENDENT'S SECOND ASSIGNMENT OF ERROR AND PETITIONER'S SECOND ASSIGNMENT OF ERROR ON CROSS-APPEAL)

We turn to Claim 75, which was set forth in paragraph 5506 of petitioner's sixth amended petition for post-conviction relief. In Claim 75, petitioner asserted that petitioner's appellate counsel rendered inadequate assistance under federal law when he failed to raise as plain error on direct appeal "the trial court's error in admitting codefendant['s] \*\*\* plea petitions containing layers of vouching." As noted, the post-conviction court determined that the factual allegations in paragraph 5506 were deemed admitted, but ultimately denied petitioner relief on that claim.

In the superintendent's second assignment of error, he contends that "[t]he post-conviction court erred by ruling that the amended answer admitted-by-omission paragraph 5506 of petitioner's petition for post-conviction relief." As described below, we agree with the superintendent.

In petitioner's second assignment of error on his cross-appeal, he contends that the post-conviction court erred in denying relief on Claim 75. Petitioner asserts that the post-conviction court's "denial is not supported by the established factual record."[11] As described below, we conclude that the post-conviction court erred in entering a judgment denying relief on Claim 75.

---

[11] Petitioner also asserts that the post-conviction "court's denial of Claim 75 failed to comply" with *Datt v. Hill*, 347 Or 672, 685, 227 P3d 714 (2010), which requires that,

"to enable federal courts to determine habeas corpus jurisdiction, a judgment denying claims for post-conviction relief must, at a minimum: (1) identify the claims for relief that the court considered and make separate rulings on each claim; (2) declare, with regard to each claim, whether the denial is based on a petitioner's failure to utilize or follow available state procedures or a failure to establish the merits of the claim; and (3) make the legal bases for denial of relief apparent."

We need not reach that issue, however, because we conclude that the post-conviction court erred in entering a judgment midtrial denying relief on Claim 75.

A. *The Superintendent's Second Assignment of Error*

1. The Historical Facts and Paragraph 5506

Petitioner had two codefendants, Wilson and Cathey. During petitioner's criminal trial the two codefendants' plea petitions were admitted without objection from petitioner's trial counsel. In paragraph 5506 of his sixth amended petition for post-conviction relief, which set forth Claim 75, petitioner asserted that his appellate counsel rendered inadequate assistance under federal law when he failed to raise as plain error on direct appeal "the trial court's error in admitting codefendant Wilson's plea petitions containing layers of vouching." Specifically, that paragraph alleged:

**"75th CLAIM FOR RELIEF (INADEQUATE ASSISTANCE OF *GUZEK I* APPELLATE COUNSEL (FEDERAL) IN FAILING TO RAISE AS PLAIN ERROR ON DIRECT CAPITAL APPEAL THE TRIAL COURT'S ERROR IN ADMITTING CODEFENDANT WILSON'S PLEA PETITIONS CONTAINING LAYERS OF VOUCHING IN THE UNDERLYING CRIMINAL CASE)**

"[Petitioner] was denied his rights to effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth (due process) amendments to the United States Constitution, when *Guzek I* appellate counsel failed to assert as plain error in [petitioner's] opening brief that the *Guzek I* trial court erred when it failed to intervene *sua sponte*, at the time of admission of evidence, testimony, and/or argument, related to State's Exhibit 186 and 186A, by striking, redacting, and/or taking curative action including giving a curative instruction sufficient to prevent the 1988 culpability trial jurors from being exposed to and/or contaminated by, and precluding jurors from considering irrelevant, impermissible, and inadmissible vouching evidence within codefendant Wilson's plea petitions including the conditions therein, containing layers of vouching including Wilson's plea agreement being predicated upon his testifying truthfully, attorney witness statements certifying that the statements, representations, and declarations made by Wilson in his plea petitions were in all respects accurate and true, including those incriminating [petitioner] in the [victims] murders, and judicial orders accepting Wilson's statements in the plea petitions as true, in that the plea

petitions, the statements and conditions contained within them, the attorney certifications attesting to the veracity of those statements, and the judicial orders accepting those statements as true were not relevant, their prejudicial impact outweighed any relevance, constituted inadmissible vouching, relied upon and/or implied knowledge of facts outside of the record, directly reflected upon and impermissibly bolstered the credibility of the testimony of key State witnesses (including that of Wilson and Cathey), impermissibly undermined the credibility of [petitioner's] alibi witnesses, and invaded the jury's role as the sole assessor of the credibility of witnesses, and the trial court's error violated [petitioner's] constitutional rights to a fair trial, to due process of law, and to confront his accusers, and further violating his rights pursuant to ORS 136.415, *et seq.*, Article I, sections 10, 11, 15 (1987), 16, 20, and 33, of the Oregon Constitution, and Article VI, cl. 2, of and the Fifth, Sixth, Eighth and Fourteenth (equal protection and due process) amendments to the United States Constitution[.]"

(Boldface and emphasis in original.)

Paragraph 5506, like paragraph 5352 (setting forth Claim 72), was within a section of the sixth amended petition for post-conviction relief titled petitioner's "**9th SET OF CLAIMS FOR RELIEF (*Guzek I* Vouching)**" (boldface in original), which, to reiterate, spanned over two thousand paragraphs.

The preceding paragraph of the petition, paragraph 5505, setting forth Claim 74, asserted a nearly identical claim of constitutionally deficient performance by appellate counsel as paragraph 5506, but arising under state, rather than federal, law.[12]

---

[12] Paragraph 5505 provided:

**"74th CLAIM FOR RELIEF (INADEQUATE ASSISTANCE OF *GUZEK I* APPELLATE COUNSEL (STATE) IN FAILING TO RAISE AS PLAIN ERROR ON DIRECT CAPITAL APPEAL THE TRIAL COURT'S ERROR IN ADMITTING CODEFENDANT WILSON'S PLEA PETITIONS CONTAINING LAYERS OF VOUCHING IN THE UNDERLYING CRIMINAL CASE)**

"[Petitioner] was denied his rights to adequate assistance of counsel under ORS 135.040, *et seq.*, and Article I, sections 11 and 16, of the Oregon Constitution, when *Guzek I* appellate counsel failed to assert as plain error in [petitioner's] opening brief that the *Guzek I* trial court erred when it failed to intervene *sua sponte*, at the time of admission of evidence, testimony, and/or argument, related to State's Exhibit 186 and 186A, by striking, redacting,

   In the superintendent's February 21, 2023, answer to the sixth amended petition for post-conviction relief, he included a denial of paragraph 5505, but not a denial of 5506. The superintendent also denied paragraphs 6521 and 6522, which asserted that appellate counsel was inadequate under state law and ineffective under federal law "in failing to raise as plain error on direct capital appeal the trial court's error in admitting codefendant Cathey's plea petition containing layers of vouching." And as noted, the superintendent's answer sought an order denying relief on all claims in the sixth amended petition for post-conviction relief.

   2.   The Post-Conviction Court Erred in Ruling the Superintendent Admitted Paragraph 5506.

   As noted, on appeal, in his second assignment of error, the superintendent contends that "the post-conviction court erred by ruling that the amended answer admitted-by-omission paragraph 5506 of petitioner's petition for post-conviction relief." Again, the parties' arguments as to this assignment of error largely mirror those made with regard to the post-conviction court's decision regarding paragraph 8439.

---

and/or taking curative action including giving a curative instruction sufficient to prevent the 1988 culpability trial jurors from being exposed to and/or contaminated by, and precluding jurors from considering irrelevant, impermissible, and inadmissible vouching evidence within codefendant Wilson's plea petitions including the conditions therein, containing layers of vouching including Wilson's plea agreement being predicated upon his testifying truthfully, attorney witness statements certifying that the statements, representations, and declarations made by Wilson in his plea petitions were in all respects accurate and true, including those incriminating [petitioner] in the [victims] murders, and judicial orders accepting Wilson's statements in the plea petitions as true, in that the plea petitions, the statements and conditions contained within them, the attorney certifications attesting to the veracity of those statements, and the judicial orders accepting those statements as true were not relevant, their prejudicial impact outweighed any relevance, constituted inadmissible vouching, relied upon and/or implied knowledge of facts outside of the record, directly reflected upon and impermissibly bolstered the credibility of the testimony of key State witnesses (including that of Wilson and Cathey), impermissibly undermined the credibility of [petitioner's] alibi witnesses, and invaded the jury's role as the sole assessor of the credibility of witnesses, and the trial court's error violated [petitioner's] constitutional rights to a fair trial, to due process of law, and to confront his accusers, and further violating his rights pursuant to ORS 136.415, et seq., Article I, sections 10, 11, 15 (1987), 16, 20, and 33, of the Oregon Constitution, and Article VI, cl. 2, of and the Fifth, Sixth, Eighth and Fourteenth (equal protection and due process) amendments to the United States Constitution."

(Boldface and emphasis in original.)

At the outset, we note that the issue raised by the superintendent's second assignment of error seems to present a closer question than the issue raised by his first or third assignments of error. In both those assignments of error, the challenged ruling relates to a paragraph that the amended answer responded to, albeit imperfectly. In contrast, the superintendent made no response to paragraph 5506.

Nevertheless, we think the record does not support a determination that the superintendent did not attempt to comply with ORCP 19. As noted, petitioner's sixth amended petition for post-conviction relief spans 6,424 pages and alleges 392 claims for relief. The superintendent filed a "proposed amended answer" to that petition on April 13, 2023, but upon realizing that that answer contained omissions and typos, sought leave to file a different answer correcting those omissions and typos.

Then, after discussion with the post-conviction court, the parties agreed to proceed with the amended answer that was filed on April 13, 2023, rather than having the superintendent provide a different answer that corrected the omissions and typos, which, as noted, the superintendent had alerted the post-conviction court and petitioner were present in the April 13 proposed amended answer.

Further, the superintendent denied a nearly identical claim of constitutionally deficient performance by appellate counsel as petitioner asserted in Claim 75, but arising under state, rather than federal, law—*i.e.*, paragraph 5505 setting forth Claim 74—in his initial answer to the sixth amended petition and in his amended answer to the sixth amended petition.

Although the superintendent's amended answer appears to be noncompliant with ORCP 19 because it omits a response to 5506, we cannot say that that omission is not an "error" or "defect" in the pleading. *Cf. Mulier*, 332 Or at 350 ("A *complete failure* to allege the right to attorney fees in a motion under ORCP 68 C(2)(b) does not demonstrate an attempt to comply with the requirements of that rule." (Emphasis added.)).

And, for similar reasons as with the superintendent's first and third assignments of error, we conclude that the record does not support a determination that disregard of the "error" or "defect" in the superintendent's amended answer—*i.e.*, omitting a response to paragraph 5506—would "affect the substantial rights" of petitioner. That is because the answer provided adequate notice of the superintendent's position as to that claim: The answer to the sixth amended petition and amended answer both denied paragraph 5505, alleging a nearly identical claim as paragraph 5506 but arising under state, rather than federal, law; the superintendent's amended answer to the sixth amended petition denied paragraphs containing claims that petitioner's criminal appellate counsel was constitutionally deficient in not assigning as error the trial court permitting the admission of petitioner's other codefendant's plea petition (paragraph 6521 and paragraph and 6522); and the superintendent consistently took the position that the post-conviction court should deny relief on petitioner's guilt-phase claims.

And, again, it is difficult to appreciate how petitioner would have thought the superintendent was *admitting* Claim 75 set forth in paragraph 5506 when the superintendent sought an order denying relief on all claims. The pleadings in this case, when considered as a whole, sufficiently brought "forth into the light the points that are in dispute." *Ogle*, 365 Or at 781 (internal quotation marks omitted).

Thus, we conclude that the post-conviction court erred when it ruled that the amended answer admitted-by-omission paragraph 5506 of petitioner's petition for post-conviction relief.

B.  *Petitioner's Second Assignment of Error on Cross-Appeal*

As noted, in petitioner's second assignment of error on his cross-appeal, he contends that the post-conviction court erred by denying relief on Claim 75. The superintendent, for his part, agrees reversal is required—he asserts that the post-conviction court "erred by ruling on that claim as a matter of law in the middle of trial." We agree reversal is required.

On the fourth day set for trial, the post-conviction court granted judgment for the superintendent on Claim 75

and granted judgment for petitioner on Claims 72 and 139. It indicated that the "legal vehicle" for its ruling was that of summary judgment. But the superintendent did not move for judgment on Claim 75, and a motion for summary judgment in the midst of trial is not contemplated by the Oregon Rules of Civil Procedure. *See* ORCP 47 C ("The motion [for summary judgment] and all supporting documents must be served and filed at least 60 days before the date set for trial.").

Here, because the superintendent did not make any motion for judgment, it was improper for the post-conviction court to grant the equivalent of summary judgment to the superintendent midtrial on Claim 75. *See Woodroffe v. State*, 292 Or App 21, 24, 422 P3d 381 (2018) (noting it "is improper for a trial court to grant summary judgment on an issue that is not raised in the moving party's motion"). Consequently, we agree with the parties that reversal of the post-conviction court's denial of Claim 75 is required.

Further, to the extent that petitioner argues that the post-conviction court should have granted his motion for judgment on Claim 75, we reject that argument. Petitioner's motion for judgment on Claim 75 was premised on the post-conviction court's ruling that the superintendent had admitted paragraph 5506 of the sixth amended petition for post-conviction relief. But, as explained above in our discussion of the superintendent's second assignment of error, the post-conviction court erred when it ruled that the superintendent admitted paragraph 5506. Consequently, there was no basis upon which to grant petitioner's motion.

## VII.   THE POST-CONVICTION COURT'S RULINGS PROHIBITING A SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE (THE SUPERINTENDENT'S SIXTH ASSIGNMENT OF ERROR) AND DENYING THE SUPERINTENDENT'S MOTION TO DISMISS PETITIONER'S PENALTY CLAIMS AS MOOT (THE SUPERINTENDENT'S SEVENTH ASSIGNMENT OF ERROR)

At the time of the crimes in the underlying criminal case—1987—the only two sentencing options for a conviction for aggravated murder were life imprisonment with a

30-year minimum, or a sentence of death. ORS 163.105(1) (1987); ORS 163.150(1)(e) (1987). As noted above, petitioner was sentenced to death.

During the pendency of the post-conviction proceeding, the Supreme Court decided *State v. Bartol*, 368 Or 598, 496 P3d 1013 (2021), which addressed the constitutionality of existing death sentences following the legislature's enactment of Senate Bill (SB) 1013 (2019), which narrowed the scope of the crime of aggravated murder. *Id.* at 624-25. *Bartol* held that, following the enactment of SB 1013, death was an unconstitutionally disproportionate punishment under Article I, section 16, of the Oregon Constitution, for persons whose aggravated murder convictions were based on conduct that would no longer qualify for the death penalty. 368 Or at 624-25. In light of *Bartol*, the parties in this case agreed that death was not a permissible sentence for petitioner, that petitioner's death sentence needed to be vacated, and that petitioner was entitled to a new sentence.[13]

In 2022, petitioner filed a motion "to preclude [the post-conviction] court imposing a life without parole sentence," which the superintendent argued was the sentence that should be imposed. Petitioner contended that "the court's authority to grant relief pursuant to the Oregon Post-Conviction Relief Act, ORS 138.510, *et seq.*, does not include the authority to impose a sentence of life without the possibility of parole." Specifically, petitioner argued that "as a matter of law, ORS 138.510-138.680 does not authorize a post-conviction court to impose a life without parole sentence against [petitioner]" because doing so would violate the "constitutional protections against *ex post facto* laws contained in Article I, section 21, of the Oregon Constitution and Article I, section 10, of the United States Constitution."

The superintendent responded that the post-conviction court "should remedy the constitutional violation not by ordering a resentencing but instead by reforming

---

[13] As the superintendent explained in the post-conviction court, the particular conduct that provided "the factual basis for each of petitioner's convictions for aggravated murder, as they were charged *** cannot now be prosecuted as aggravated murder under the current version of ORS 163.095" and, instead, "the conduct that was charged in those counts is now prosecutable *** only as first-degree murder under ORS 163.107(1)(d), (j), (k)."

petitioner's death sentence to be a true-life sentence." As the superintendent saw it, "although petitioner committed the crime of conviction before ORS 163.150 was amended [by SB 1013] *** a modification of the judgment to vacate the death sentence and to impose instead a true-life sentence, as a remedy to cure the *Bartol* problem, is the appropriate and permissible remedy." The superintendent argued that the "*ex post facto* clauses do not preclude such a modification in these circumstances."

The post-conviction court entered an order granting petitioner's motion on May 17, 2022, after it concluded that the constitutional prohibitions against *ex post facto* laws prohibited "the Court from considering a life-without-possibility-of-parole sentence." On appeal, petitioner describes the effect of that order as "prohibiting imposition of [life without parole] against petitioner." In his sixth assignment of error, the superintendent "seeks reversal of the post-conviction court's ruling that the state and federal *ex post facto* clauses bar reducing petitioner's sentence from death to life without parole."

On December 13, 2022, Governor Brown issued an order of commutation that "reduced" petitioner's "death sentence to life in prison without the possibility of parole." As a result of that commutation, "petitioner's judicially imposed sentence"—death—"is deemed not to have existed, and a new sentence, derived from a different source, became effective as if it were the original sentence." *Thompson v. Fhuere*, 372 Or 81, 97, 545 P3d 1233 (2024). We "must now proceed as if petitioner had received a sentence of life without the possibility of parole from the beginning." *Id.* at 97-98. Further, although a sentence of life without parole was not a sentence that existed for petitioner's crimes at the time that they were committed, we do not understand that to be a bar to the Governor commuting petitioner's sentence to a less severe sentence for his crime. *Marteeny v. Brown*, 321 Or App 250, 289, 517 P3d 343, *rev den*, 370 Or 303 (2022) ("It appears to be universally understood that the commuted sentence need not be a sentence that was previously legislatively created."). That is, we do not understand the commutation of petitioner's death sentence to a sentence of life without the parole to

violate petitioner's *ex post facto* rights—the Governor could commute petitioner's sentence (death) to a less severe sentence (life without parole).[14]

Thus, as this case comes to us, the underlying premise of the parties' arguments to the post-conviction court—that petitioner needs a new sentence because the sentence of death was unlawful—is no longer factually accurate because, from the beginning, petitioner was serving a sentence of life without parole and his sentence of death is deemed not to have existed. *Thompson*, 372 Or at 93 (noting Governor Brown's "commutation order fundamentally changed the circumstances of this case and the nature of what had been litigated, up to that point, in the post-conviction court" and that "[i]n this appeal of the post-conviction court's judgment resolving petitioner's claims for post-conviction relief, our task is to address whether petitioner's assignments of error present a basis for reversing that judgment—now that petitioner's death sentence has been commuted"). Because the sentence of life without parole does not violate petitioner's *ex post facto* rights—as discussed above, the Governor could commute petitioner's sentence (death) to a less severe sentence (life without parole) even if that sentence was not a statutorily authorized sentence at the time of petitioner's conduct, *Marteeny*, 321 Or App at 289—and because the basis for the post-conviction court's ruling was that a life without parole sentence did violate his *ex post facto* rights, we reverse the post-conviction court's ruling that a sentence of life without parole is precluded because it violates petitioner's *ex post facto* rights.

In reaching that conclusion, we note that the parties did not meaningfully address either in their briefing or in their oral argument before this court the issue of how we should view the post-conviction court's ruling precluding a sentence of life without parole in light of the Governor's commutation of petitioner's sentence to life without parole. In a memorandum of additional authorities that was prompted

_____

[14] Our conclusion here is made in light of the current status of this case—*i.e.*, the Governor having commuted petitioner's sentence of death, and petitioner not having succeeded on any of his claims for post-conviction relief. We express no opinion on permissible sentences in the event that petitioner is subsequently successful with respect to his penalty-phase claims.

by a question that this court asked the parties to respond to during oral argument, however, petitioner contends that "the 'commuted sentence' does not supersede the [post-conviction court's] ruling prohibiting imposition of [life without parole] against petitioner." We disagree: At the time of the commutation petitioner had been sentenced to death; after the commutation, petitioner was serving a sentence of life without parole and had been since his original sentencing. *Thompson*, 372 Or at 97 (as a result of commutation "petitioner's judicially imposed sentence *** is deemed not to have existed, and a new sentence, derived from a different source, became effective as if it were the original sentence").

That renders the post-conviction court's order precluding a sentence of life without parole because it violated the *ex post facto* clauses erroneous—it does not violate petitioner's *ex post facto* rights for petitioner to serve a sentence (life without parole) that he is lawfully serving as a result of the Governor's commutation (the sentence being less severe than his judicially imposed sentence). *See Thompson*, 372 Or at 106 (noting "because the Governor's commuted sentence became the operative sentence, as though it had been the sentence originally imposed," the petitioner was "not entitled to relief concerning the judicially imposed sentence that had been the focus of the post-conviction court's inquiry").[15]

Thus, we conclude that the post-conviction court erred when it determined that a sentence of life without parole would violate the *ex post facto* clause.

Additionally, we note that, in his seventh assignment of error, the superintendent contends that the post-conviction court erred when it denied the superintendent's motion to dismiss petitioner's penalty-phase claims as moot on the grounds that "*Bartol* plus [the post-conviction court's] ruling on [petitioner's motion to preclude a life-without-parole

---

[15] Petitioner also notes in his memorandum of additional authorities that the commutation order permits petitioner to seek "further relief from the courts" as he "may be entitled to." Other than that which is inconsistent with this opinion, we express no opinion on the scope of relief from the commutation order that he may be entitled to.

In that regard, we note that, in his sixth amended petition for post-conviction relief, petitioner raises seven claims—Claims 387 to 392—"regarding the gubernatorial commutation."

sentence] rendered [petitioner's] penalty-phase claims moot." The need to address that assignment of error is obviated by our conclusion as to petitioner's sixth assignment of error.

## VIII.   CONCLUSION

As to petitioner's first assignment of error on his cross-appeal, we conclude that the post-conviction court did not abuse its discretion in granting the superintendent's motion for leave to file an amended answer.

As to the superintendent's first through third assignments of error, we conclude that the post-conviction court erred in ruling that the amended answer admitted-by-omission paragraphs 5352, 5506, and 8439, of petitioner's sixth amended petition for post-conviction relief. That conclusion obviates the need to consider the superintendent's fourth and fifth assignments of error.

As to petitioner's second assignment of error on his cross-appeal, we conclude that the post-conviction court erred in denying relief on Claim 75 midtrial, as if the superintendent had moved for judgment when he had not in fact done so. We also conclude that petitioner was not entitled to relief on Claim 75 based on the post-conviction court's ruling that the superintendent's amended answer admitted-by-omission paragraph 5506 of petitioner's sixth amended petition for post-conviction relief. That is because, as noted above, the post-conviction court erred in ruling that the superintendent had admitted paragraph 5506.

Finally, we conclude that, in view of the Governor's commutation of petitioner's death sentence, the post-conviction court erred in ruling that a sentence of life without parole would violate petitioner's *ex post facto* rights, and that that conclusion obviates the need to address the superintendent's seventh assignment of error.

On appeal and cross-appeal, reversed and remanded.